OPINION OF THE JUSTICES OF THE SUPREME JUDICIAL COURT, ON THE QUESTION, WHETHER A TOWN, HAVING A RIGHT TO ELECT A REPRESENTATIVE, CAN CONSTITUTIONALLY VOTE NOT TO SEND.

The right of a town, to elect a representative, is a corporate right, secured by the constitution, to be exercised only in a corporate capacity; and if a town votes not to elect, or not to elect the whole number to which it is entitled, a minority of the electors, dissenting from such vote, cannot legally proceed to an election.

THE committee on elections, to whom were referred the petitions against the elections in Nantucket and Sharon, at the May session, having recommended the adoption of an order for obtaining the opinion of the justices of the supreme judicial court on the questions involved therein, it was accordingly

" Ordered, That the honorable the justices of the supreme judicial court be, and they hereby are requested to give their opinion on the following question :—

Whether a town, having by the constitution a right to send a representative or representatives to the general court, can constitutionally, and legally, vote not to send a representative, and whether such vote would be binding on a minority of voters dissenting therefrom in such town."

At the January session, the following communication from the justices of the supreme judicial court, in answer to the questions proposed to them, was received and referred to the committee on elections[1] :—

" To the speaker of the house of representatives of the general court of Massachusetts.

[1] 36 J. H. 217.

Sir,— The undersigned, justices of the supreme judicial court, have considered the several questions proposed to them, by an order of the house of representatives, passed 13th June, 1815, and request you to make known the following as their answer.

They are satisfied that the right to send a representative is a corporate right vested in the several towns by the constitution, and can be exercised by them only in a corporate capacity; and it necessarily follows, that when a town is legally assembled for the purpose of electing a representative, if a vote pass not to send one, the minority dissenting from that vote cannot legally proceed in the choice.

The undersigned have recurred to the opinion expressed by three of the justices of the court upon these points, in their answer to questions proposed to them by an order which passed the honorable house of representatives, on the 6th of February, 1811.

As that opinion was incidentally given in discussing another question, the undersigned have deliberately revised the subject; and the result is, that the survivor of the three justices who signed that answer remains of the same opinion therein expressed, and the rest of the undersigned justices fully concur in it.

By the constitution, chap. 1, sec. 3, art. 2, it is provided, " that every corporate town, containing one hundred and fifty ratable polls, may elect one representative; every corporate town, containing three hundred and seventy-five ratable polls, may elect two representatives," and so on, making two hundred and twenty-five ratable polls, the mean increasing number.

This article of the constitution, of itself, would seem to impose no duty upon towns, but only secure to them a right or privilege, which they might waive or improve, at their pleasure.

But by the third paragraph of the same article, it is provided, " that the house of representatives shall have the power, from time to time, to impose fines upon such towns as shall neglect to choose and return members to the same, agreeably

to the constitution." Taking both clauses together, it is obvious, that to send a representative is a corporate duty as well as a corporate right, for the neglect of which the house may impose a fine, but which neglect they are under no obligation by the constitution to punish. If the house may excuse the delinquency, we think it clear that a town may constitutionally vote not to send, and so incur the risk of a fine, or trust to the clemency of the house, and that in such case the minority cannot impose a burden upon the town, which the house of representatives may excuse them from bearing.

It appears to the undersigned, also, that the duty prescribed by the constitution extends to the whole number of representatives which any town may have a right to send; so that if the minority of a town having a right to send but one might proceed to choose when a vote has passed not to send any; the minority of a town which has the right to send many representatives might proceed to choose the whole number, although a vote had passed to send but a part of the number to which the town is entitled.

It is also worthy of consideration, that if a minority have the right under such circumstances, since no rule exists by which the number of electors is limited, a few individuals might act upon this important subject contrary to the sense of a vast majority; and the principle might be ludicrously carried into effect, by a number of votes much smaller than the number of representatives to be returned by the town.

For the foregoing reasons, and others which might be suggested, if necessary, the undersigned are fully satisfied with the opinion stated in the answer before referred to, to the order passed on the 6th of February, 1811.

With respect,

(Signed)      ISAAC PARKER,
GEORGE THACHER,
CHARLES JACKSON,
SAMUEL PUTNAM,
SAMUEL S. WILDE.